UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTCIUT

| Todd M. Cassile, | Case No.: 18-cv- |
| --- | --- |
| Plaintiff, | **COMPLAINT** |
| -against- | **December 10, 2018** |
| Ocwen Loan Servicing, LLC, | |
| Defendant. | |

The Plaintiff Todd M. Cassile, as and for a complaint, alleges as follows:

## INTRODUCTION

1. This is an action for damages, costs, and attorney's fees arising out of Defendant's dual tracking of its review of the Plaintiff's loan modification application with foreclosure and the Defendant's failure to provide accurate information regarding the loss mitigation options as required by federal law.

## PARTIES

2. Plaintiff Todd M. Cassile (the "Plaintiff") is a natural person residing at

3. Defendant Ocwen Loan Servicing, LLC (the "Defendant") is a Delaware limited liability company engaged in the business of servicing mortgage loans in Connecticut, with its principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409.

## JURISDICTION

4. This Court has jurisdiction pursuant to 12 U.S.C. § 2614 and 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*. ("RESPA").

5. This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. § 1367.

6. This Court also has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 as the Parties are citizens of diverse states and the amount in controversy exceeds $75,000.

## VENUE

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as substantially all of the events or omissions giving rise to this action occurred in this district.

## NATURE OF CASE

8. The Plaintiff brings this action under the mortgage servicing regulations promulgated by the Consumer Finance Protection Bureau under RESPA and Dodd-Frank and under the Connecticut Unfair Trade Practices Act ("CUTPA").

9. The events that gave rise to this complaint concern the Plaintiff's residence, 102 Benham Street, Bristol, CT 06010. The Plaintiff's residence is encumbered by a first-position mortgage loan dated January 24, 2003, securing a promissory note of even-date, and recorded on January 29, 2003.

10. The Defendant serviced the loan during all dates alleged in the complaint.

11. The Plaintiff has a private right of action under RESPA and Regulation X, as well as a private right of action for related claims under CUTPA. Damages include actual damages, costs, statutory damages, and attorneys' fees in an amount to be determined at trial but in excess of $75,000.

## STATEMENT OF FACTS

12. The Plaintiff defaulted on his loan around July of 2017.

13. In August of 2017, the Plaintiff made a repayment plan with the Defendant.

14. In August of 2017, the Plaintiff made a down payment towards this repayment plan of $2,000.

15. In October of 2017, the Plaintiff called the Defendant to set up another repayment plan.

16. The Defendant offered to permit the Plaintiff to set up another repayment plan. The Defendant also suggested that the Plaintiff apply for another loan modification. The Defendant stated that if the Plaintiff did not qualify for a loan modification, he could then set up a repayment plan.

17. The Defendant then emailed and mailed mortgage modification packets to the Plaintiff.

18. Under FHA-HAMP rules, the Plaintiff would not be eligible for a loan modification until November of 2018.

19. The Defendant has an obligation under federal law to provide accurate information about the loss mitigation options available to the Plaintiff.

20. Through the systems, training, or information contained within the Plaintiff's file, the Defendant knew or should have known that the Plaintiff was not presently eligible for a loan modification.

21. On October 26, 2017, the Defendant communicated with the Plaintiff's spouse and advised her that the Plaintiff had submitted a complete modification application.

22. The Plaintiff reasonably interpreted this statement to mean that the Defendant would not commence a foreclosure action.

23. The Defendant was now barred from commencing a foreclosure action against the Plaintiff until it completed a review and rendered a decision on this modification application under applicable federal regulation.

24. The Defendant never rendered a decision or sent any notice of a decision regarding this modification application to the Plaintiff.

25. In the fall of 2017, the Plaintiff's vehicle was declared a total loss.

26. Near the end of November of 2017, the Plaintiff was approved to purchase a similar vehicle to the totaled car with a down payment of $1,500 and a monthly payment of less than $400.

27. On December 10, 2017, the Plaintiff submitted and the Defendant received a second mortgage modification application.

28. The Defendant was again barred from commencing a foreclosure action against the Plaintiff until it completed a review and rendered a decision on this modification application under applicable federal regulation.

29. Upon information and belief, the Defendant then requested a correction to a single page in the second mortgage modification application.

30. On December 14, 2017, the Plaintiff submitted and the Defendant received a single corrected page for the prior mortgage modification application.

31. The Defendant was now barred from commencing a foreclosure action against the Plaintiff until it completed a review and rendered a decision on the revised modification application under applicable federal regulation.

32. On December 19, 2017, the Defendant notified the Plaintiff that his second application was complete as of December 18, 2017.

33. Upon information and belief, the Defendant caused a summons and complaint for foreclosure to be served on the Plaintiff prior to notifying the Plaintiff that his December 10, 2017 modification application was incomplete or, in the alternative, the Defendant caused a summons and complaint for foreclosure to be served on the Plaintiff after the Defendant determined the Plaintiff's modification application was complete.

34. Under Connecticut law, the first notice or filing required to commence a foreclosure action is the service of the summons and complaint.

35. The Plaintiff, through his spouse, complained about the commencement of the foreclosure action to the Defendant.

36. The Defendant, in a letter dated January 12, 2018, confirmed to the Plaintiff that it had informed the Plaintiff that the modification application was complete as of October 26, 2017, based on telephone recordings.

37. The Defendant, in the same letter, stated that it had removed the matter from foreclosure effective January 10, 2018, and that it would waive any fees assessed in association with its foreclosure referral.

38. In January of 2018, the Plaintiff returned to CarMax to purchase the vehicle they had previously been approved for. This time, because of the foreclosure filing, the Plaintiff was told he had to increase his down payment to $3,000 and the interest rate offered to him was increased.

39. Because of the increased credit costs, the Plaintiff was forced to purchase a less expensive vehicle.

40. On February 5, 2018, the Plaintiff, through his spouse, began attempting to arrange a new repayment plan with the Defendant, pending waiver of the foreclosure fees.

41. In a letter dated March 5, 2018, however, the Defendant decided that would refuse to waive the foreclosure fees it had previously agreed to waive.

42. But for the incorrect information regarding loss mitigation options provided to the Plaintiff during their phone calls in October of 2017 the Plaintiff would have entered into a voluntary repayment plan with the Defendant and avoided foreclosure.

43. The Defendant compounded its error by referring the matter to foreclosure despite verbally informing the Plaintiff in October that his first modification application was complete.

44. The Defendant further compounded its error by serving the Plaintiff with a summons and complaint after the Plaintiff had submitted a second facially complete modification application.

45. As a result, the Plaintiff suffered emotional distress, improper fees were added to his mortgage account, and he was forced to pay more for a vehicle because of the damage the Defendant caused to his credit score.

46. Defendant is a mortgage servicing company regulated under RESPA and Regulation X. Under state law, it is subject to CUTPA.

47. Ocwen has engaged in a pattern or practice of dual-tracking loss mitigation review with foreclosure. *See Mace v. Ocwen Loan Servicing, LLC*, 252 F. Supp. 3d 941, 946 (N.D. Cal. 2017); *Cornejo v. Ocwen Loan Servicing, LLC*, No. 1:15-CV-000993-JLT, 2016 WL 4382569, at *13 (E.D. Cal. Aug. 16, 2016)

48. Regulation X represents a public policy of promoting fairness for consumers in the mortgage servicing industry. As observed by the Consumer Financial Protection Bureau (the "CFPB"),

> RESPA is a remedial consumer protection statute and imposes obligations upon servicers of federally related mortgage loans. RESPA has established a consumer protection

paradigm of requiring disclosures to consumers, and establishing servicer requirements and prohibitions, for the purpose of protecting borrowers from certain potential harms. The disclosures include, for example, disclosures regarding escrow account balances and disbursements, transfers of mortgage servicing among mortgage servicers, and force-placed insurance notices. The requirements and prohibitions include requirements for servicers to respond to qualified written requests from borrowers and with respect to escrow account payments. Servicers are subject to civil liability for failure to comply with such requirements and prohibitions.

Considered as a whole, RESPA, as amended by the Dodd-Frank Act, reflects at least two significant consumer protection purposes: (1) to establish requirements that ensure that servicers have a reasonable basis for undertaking actions that may harm borrowers and (2) to establish servicers' duties to borrowers with respect to the servicing of federally related mortgage loans.

Preamble to Regulation X, 48-49, *available at* http://files.consumerfinance.gov/f/201301_cfpb_final-rule_servicing-respa-preamble.pdf (last accessed March 17, 2016 at 2:34 p.m.).

49. Under 12 CFR § 1024.40(b), the Defendant is required to "maintain policies and procedures reasonably designed to ensure that servicer personnel assigned to a delinquent borrower … perform the following functions:

> (1) Provide the borrower with accurate information about:
>     (i) Loss mitigation options available to the borrower from the owner or assignee of the borrower's mortgage loan;
>     (ii) Actions the borrower must take to be evaluated for such loss mitigation options, including actions the borrower must take to submit a complete loss mitigation application, as defined in §1024.41, and, if applicable, actions the borrower must take to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program offered by the servicer;
>     (iii) The status of any loss mitigation application that the borrower has submitted to the servicer;
>         ***
>     (v) Applicable loss mitigation deadlines established by an owner or assignee of the borrower's mortgage loan or §1024.41.

50. RESPA and Regulation X are remedial statutes designed, as relevant to the Plaintiff, to prevent improper foreclosures by (a) requiring servicers to provide accurate

information about loss mitigation options to borrowers and (b) preventing servicers from dual tracking the loss mitigation process with the foreclosure process.

## FIRST CAUSE OF ACTION
## VIOLATION OF RESPA

51. The Plaintiff restates and realleges paragraphs 1-45 as if fully set forth herein.

52. Mortgage in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b) and 12 U.S.C. § 2602(1) in that such loan is secured by a first lien on a one-family unit of residential real property and was made by a lender satisfying the requirements of 12 U.S.C. § 2602(1)(B)(i) or a creditor satisfying the requirements of 12 U.S.C. § 2602(1)(B)(iv).

53. The Defendant is subject to Regulation X and Z and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. §1026.41(e)(4), nor for the exemption for a "qualified lender", as such term is defined in 12 C.F.R. §617.700.

54. The Plaintiff is not in an active bankruptcy case under Title 11 of the United States Code, and the Mortgage has not been discharged. See 12 CFR § 1024.35(g)(1)(iii)(B); 12 CFR § 1024.39(d)(1).

55. The Plaintiff may enforce the provisions of 12 CFR § 1024.41(a) under 12 USC § 2605(f).

56. 12 C.F.R. 1024.41(c)(iv) defines a "facially complete application" as a loss mitigation application where either (1) "a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B) of this section," (2) "when no additional information is requested in such notice," or (3) "once the servicer is required to provide the borrower a written notice pursuant to paragraph (c)(3)(i) of this section"

57.     12 C.F.R. 1024.41(b) defines a complete loss mitigation application as an application wherein servicer has received all the information that the servicer requires to evaluate applications for the loss mitigation options available to a borrower.

58.     12 C.F.R. 1024.41(b) further states that a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.

59.     Where a servicer is in possession of a complete or facially complete loss mitigation application, Regulation X prohibits a servicer from making the first notice or filing required to commence a foreclosure action.

60.     The Defendant failed to place a hold on foreclosing the Plaintiff's mortgage, despite its statement to the Plaintiff on October 26, 2017 that it was in possession of a complete loss mitigation application.

61.     The Defendant failed to place a hold on foreclosing the Plaintiff's mortgage upon receipt of a facially complete application on December 10, 2017, or in the alternative failed to place a hold on foreclosing the Plaintiff's mortgage upon receipt of a complete application on December 14, 2017.

62.     The Plaintiff was harmed because of these violations due to the Defendant's assessment of improper foreclosure fees, emotional distress, and the loss of a better car loan.

63.     The Defendant has engaged in a pattern or practice of the foregoing violations of Regulation X, and as a result the Plaintiff is entitled to statutory damages of $2,000 per violation.

### SECOND CAUSE OF ACTION
### VIOLATION OF CUTPA

64.     The Plaintiff restates and realleges paragraphs 1-61 as if fully set forth herein.

65.     The Defendant is a mortgage servicer that is regulated by both the mortgage-servicing regulations promulgated under RESPA.

66. The Plaintiff is a "person" as defined by Connecticut General Statutes Section 42-110a(3).

67. The actions of the Defendant were done in the conduct of trade or commerce.

68. The Defendant has engaged in unfair and/or deceptive acts or practices within the meaning of Connecticut General Statutes Section 42-110b(a) including, but not limited to, the following:

   a. Soliciting the Plaintiff to apply for a loan modification for which he was not eligible;

   b. Making material misrepresentations or omissions likely to mislead a consumer acting reasonably under the circumstances, including misrepresenting to the Plaintiff his eligibility, continued evaluation, and expectancy of receiving a modification of his loan

   c. Improperly dual tracking the Plaintiff's loan; and

   d. Improperly charging the Plaintiff fees, interest, and other charges to which it is not entitled.

69. Based on the foregoing, violations of RESPA and Regulation X are an established concept of unfairness. Regulation X was written to make mortgage servicing fairer to consumers.

70. The Defendant's actions have offended public policy, including the standards set forth in RESPA and Regulation X.

71. The Defendant's actions were willful, immoral, unscrupulous, unethical, and oppressive, and caused substantial injury to borrowers like the Plaintiff.

72. These damages frustrated the ability of Plaintiff to pursue other loss mitigation alternatives.

73. Defendant is liable to Plaintiff for the damages he suffered because of Defendant's violations of CUTPA.

74. A copy of this pleading has been electronically mailed to the Attorney General and the Commission of Consumer Protection pursuant to Connecticut General Statutes Section 42-110g(c).

**WHEREFORE**, the Plaintiff prays for a judgment:

i. Ordering the Defendant to pay the Plaintiff's actual damages;

ii. ordering the Defendant to pay the Plaintiff's actual damages, statutory damages, and attorneys' fees pursuant to 12 U.S.C. § 2605(f);

iii. ordering the Defendant to pay the Plaintiff's actual and consequential damages pursuant to Conn. Gen. Statutes § 42-110g(a);

iv. ordering the Defendant to pay the Plaintiff's punitive damages in an amount calculated to punish the Defendant for its willful and egregious conduct pursuant to Conn. Gen. Statutes § 42-110g(a); and

v. awarding the Plaintiff reasonable attorneys' fees and costs pursuant to Conn. Gen. Statutes § 42-110g(d); and

together with such other and further relief as this Court deems just and proper.

                                              THE PLAINTIFF TODD M. CASSILE

Dated: December 10, 2018                /s/ Loraine Martinez
                                              Loraine Martinez (ct29220)
                                              David Lavery (ct29971)
                                              Connecticut Fair Housing Center
                                              60 Popieluszko Court
                                              Hartford, CT  06106
                                              T: (860) 263-0732
                                              F: (860) 247-4236
                                              lmartinez@ctfairhousing.org